Barbara J. BEATON, for herself and as next friend for her grandchildren, Barbara Cortes, Drina Saludares, Shayne Forest, Margeaux Forest, Greg Payne, and Shanon Bernstine; Shari L. Talbott, for herself, and as next friend for her son, Trevor Talbott, and her nephew, Jeff Howard; Joan Smiley, for herself and as next friend for her grandchildren, Antjaun Jones and Renatta Richardson, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Richard W. THOMPSON, Secretary of Washington State Department of Social and Health Services, Defendant–Appellant.

No. 89–35474.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1990.

Decided Aug. 31, 1990.

Rebecca A. Vandergriff, Asst. Atty. Gen., Olympia, Wash., for defendant-appellant.

Elizabeth Schott, argued, Robin Zukoski, Evergreen Legal Services, Seattle, Wash., for plaintiffs-appellees.

Before HUG, NELSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

A group of Aid to Families with Dependent Children (AFDC) recipients who are caring for related children who also receive AFDC benefits (collectively "Beaton") filed a class action suit against the Washington State Department of Social and Health Services (DSHS) seeking to enjoin the enforcement of Washington Administrative Code (WAC) 388–24–050(3) (1989), a regulation that reduced the grants Beaton received from AFDC. The district court issued a permanent injunction and a declaratory judgment in favor of Beaton, finding the DSHS regulation violated federal AFDC regulations. DSHS appeals. We affirm.

*STANDARD OF REVIEW*

The district court's grant of a permanent injunction is reviewed for abuse of discretion and application of erroneous legal principles. *Guadamuz v. Bowen*, 859 F.2d 762, 766 (9th Cir.1988). The district court's decision to grant declaratory relief is reviewed de novo. *Fireman's Fund Insurance Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir.1988).

*FACTS AND PROCEEDINGS BELOW*

AFDC recipients are grouped in what are known as assistance units. The AFDC payment varies by the size of the assistance unit. In recognition of the economies generated by families sharing living expenses, grant amounts increase incrementally for each additional assistance unit member. Thus, under the Washington regulations at the time of this appeal, two people in one assistance unit would receive $397 for both people while two separate assistance units of one person each would receive $314 a piece.

Before January 1, 1989, DSHS grouped siblings into one assistance unit. (Siblings are children with a parent in common). Under this rule, only parents and siblings of the eligible child were required to be included in the assistance unit. Other needy AFDC eligible children living in the household (nonsiblings) were a separate assistance unit receiving a separate AFDC grant.

On January 1, 1989, DSHS enacted Washington Administrative Code 388–24–050(3). This read, in pertinent part: "The department shall authorize only one assistance unit grant for all needy eligible siblings and nonsiblings living with a single caretaker relative or relative married couple." WAC 388–24–050(3). The regulation consolidated sibling and nonsibling assistance units residing in the same household into one assistance unit. DSHS then awarded one grant to the newly consolidated unit, providing only incremental increases for any needy nonsibling children living with a caretaker relative instead of a separate AFDC grant for the nonsibling child.

On March 6, 1989, Beaton filed a complaint seeking declaratory and injunctive relief from WAC 388–24–050(3). Beaton asked that DSHS's policy and regulation be declared invalid and that DSHS be preliminarily and permanently enjoined from enforcing its regulation. Beaton maintained that the act of consolidation was an illegal scheme of proration and imputed the income of a non-legally responsible person.

Beaton also sought costs and attorney's fees under 42 U.S.C. § 1988.

On June 5, 1989, the parties agreed to combine the hearing on a preliminary injunction with a trial on the merits. After hearing oral argument, the trial court declared the regulation invalid and preliminarily and permanently enjoined DSHS from enforcing its regulation.[1]

The district court found that WAC 388–24–050(3) violated the following federal regulations: (1) 45 CFR § 233.90(a)(1) (1989) and 233.20(a)(2)(viii) (1989) which prohibit states from imputing income of non-legally responsible adults living with the needy child; (2) 45 CFR 233.20(a)(5) (1989) which prohibits states from prorating benefits to needy children unless the state complies with the requirements of a proration plan under 42 U.S.C. § 612 (1982); and (3) 45 CFR § 233.20(a)(2)(iii) (1989) and 233.10(a)(1) (1989) which prevent states from creating non-uniform, multiple AFDC payment standards that are inequitably applied. Based on these findings the court invalidated WAC 388–24–050(3). DSHS appeals.

*DISCUSSION*

### I. *Validity of WAC 388–24–050(3)*

Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601–615, is a jointly funded federal-state program. To qualify for AFDC, children must have resources below a set minimum level, be deprived of parental support because of the absence or incapacity of a parent and live in the home of a caretaker relative—the other parent, a stepparent, a sibling or a close relative. 42 U.S.C. § 606(a)(1) (Supp. V).

Washington awards AFDC benefits under a flat grant system. Under this system, the grant is calculated based on the size of the family (assistance unit) and not on the actual cost of food and shelter. A state is not required to participate in the AFDC program, but once it chooses to do so, the Supremacy Clause requires the state to conform to the Social Security Act and the federal regulations implementing it. *McCoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir.1982).

In determining the eligibility of a child for AFDC, the state is required to consider the resources available to the child, including those of an adult who is legally responsible for the child. 45 CFR § 233.20(a)(3)(ii)(D); *McCoog*, 690 F.2d at 1284. However, the regulations limit the other resources a state may consider when determining the child's need. 45 CFR § 233.90(a)(1) states that

> [T]he inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the state
>
> . . .

As part of the regulations prohibiting the state from assuming a non-legally responsible adult is contributing toward the child's care, 45 CFR § 233.20(a)(2)(viii) provides that the grant amount "will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual."

DSHS concedes that states may not attribute income of a non-legally responsible relative to a needy child. However, DSHS argues that its regulation, which reduces benefits to nonsiblings residing with caretaker relatives who are not legally responsible for them, does not impute income because it simply redefines "assistance unit," as it is empowered to do by the regulations.

The district court invalidated the regulation based on our opinion in *McCoog*. *McCoog* involved Oregon regulations that reduced the shelter component of the

---

**1.** The trial court also ordered that DSHS enact a notice and claim procedure whereby the plaintiffs could seek administrative investigation of the denial of their benefits. The order directed that DSHS reinstate the plaintiffs to full benefits by July 1, 1989. The parties agreed that the notice and claim procedure was no longer nec-essary because DSHS had fully identified the plaintiff class and paid retroactive relief as of November 1, 1989. The parties sent this stipulation and order to Judge Coughenour for his signature. DSHS has already reinstated plaintiffs' full benefits.

AFDC grant when children receiving benefits lived with non-legally responsible relatives who were not receiving benefits. We invalidated this "non-needy relative" rule. We found that the regulation improperly assumed that additional income was available to the child because the caretaker relative would bear most of the housing costs. Without proof of actual contribution by the relative, we held that a state may not presume that a non-legally responsible adult is bearing part of the child's expenses. *McCoog*, 690 F.2d at 1286. We stated that "it is improper for the state to assume that income and resources will be pooled to take advantage of the economies of scale." *Id.* at 1287 (citing *Gurley v. Wohlgemuth*, 421 F.Supp. 1337, 1346–47 (E.D.Pa.1976) (court invalidated Pennsylvania regulation that redefined assistance unit to include non-legally responsible adults because regulation presumed income)).[2]

The Washington regulation fits the same mold as the regulations invalidated in *McCoog* and *Gurley*. Despite DSHS's efforts to identify the regulation as merely a redefinition of terms, the effect of the regulation is to presume that the non-legally responsible relative with whom the child lives is contributing to the support of the child without proof of any actual contribution. DSHS's regulation necessarily involves attributing income of the non-legally responsible adult because the plan reduces the grant to the child based on the fact that the child is living with, and thus sharing expenses with, the caretaker relative. As in *Gurley*, the redefinition of the assistance unit implicitly assumes that the care-

taker relative will be paying for some of the expenses of the home. As we recognized in *McCoog*, AFDC regulations prohibit this imputation of income.[3] *McCoog*, 690 F.2d at 1287. The regulation violates 45 CFR § 233.20(a)(2)(viii), which prohibits a reduction in benefits solely because of the presence in the house of a non-legally responsible adult, and 45 CFR § 233.90(a)(1) and § 233.20(a)(3)(ii)(D), which mandate against presuming a non-legally responsible person is contributing to the needy child's expenses. Therefore, WAC 388–24–050(3) is invalid.[4]

## II. *Attorney's Fees*

Beaton requests attorney's fees under 42 U.S.C. § 1988. § 1988 authorizes awards of attorney's fees to prevailing parties in suits under 42 U.S.C. § 1983. 42 U.S.C. § 1988. Because we affirm the district court's judgment, Beaton is a prevailing party. Therefore, attorney's fees are awarded to Beaton in an amount to be determined in the trial court on remand.

## CONCLUSION

WAC 388–24–050(3) violates the federal regulations governing AFDC programs because it improperly imputes income. Therefore, the statute is invalidated and the district court's judgment is affirmed. The case is remanded for a determination of a reasonable attorney's fee.

AFFIRMED and REMANDED.

---

**2.** The pertinent regulations have been changed since *Gurley* was decided. However, although the wording is slightly different now, the regulations still prohibit the presumption of income without proof of actual contribution. *See* 45 CFR §§ 233.90(a)(1), 233.20(a)(3)(ii)(D) and 233.20(a)(2)(viii).

**3.** DSHS also argues that *McCoog's* reasoning should not apply because the non-legally responsible adults here are AFDC recipients and the income being allegedly attributed is AFDC benefits. The *Gurley* court persuasively rejected both of these arguments. *Gurley*, 421 F.Supp. at 1345–46.

**4.** The district court also found that WAC 388–24–050(3) prorated benefits without complying with the requirements of a proration plan set

out in 42 U.S.C. § 612 and 45 CFR § 233.20(a)(5). The district court also ruled that the regulation violated 45 CFR §§ 233.20(a)(2)(iii), 233.10(a)(1) and 233.10(a)(2)(iv) by creating multiple AFDC payment standards that were non-uniform and inequitably applied. Because we find Washington's regulation violates the federal regulations against presumption of income, we do not address these aspects of the court's ruling. Similarly, we do not address Beaton's constitutional claim that the regulation violates the Equal Protection Clause. *See Figueroa v. Sunn*, 884 F.2d 1290, 1292 (9th Cir. 1989) (court refrains from deciding constitutional issue where a non-constitutional ground for decision is available).